UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22283-CIV-LENARD/GARBER

**1550 BRICKELL ASSOCIATES,**

    Plaintiff,

v.

**QBE INSURANCE CORPORATION,**

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF AND REFERENCES TO INDEMNITY RESERVES (D.E. 290)**

**THIS CAUSE** is before the Court on Defendant QBE Insurance Corporation's Motion *in Limine* to Preclude Evidence of and References to Indemnity Reserves ("Motion," D.E. 290), filed on July 6, 2010. On July 23, 2010, Plaintiff 1550 Brickell Associates filed its response in opposition to Defendant's Motion ("Response," D.E. 295), to which Defendant filed its reply ("Reply," D.E. 304) on August 2, 2010. Having considered the Motion, Response, Reply, related pleadings, and the record, the Court finds as follows.

    **I.**    **Background**

This case involves Plaintiff's attempt to collect the proceeds of an insurance policy underwritten by Defendant after Hurricane Wilma severely damaged a pair of insured buildings near downtown Miami. Plaintiff originally brought this action alleging breach of

contract and breach of the duty of good faith and fair dealing.[1] (See D.E. 1.) On September 17, 2009, the Court stayed and administratively closed this action pending the Florida Supreme Court's resolution of the issue certified to it by the Eleventh Circuit as to whether Florida law recognizes a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time. (See D.E. 252.) That question remains pending. Plaintiff subsequently moved to reopen this case and voluntarily dismiss its good faith claim in order to proceed to trial. (See D.E. 253.) On January 5, 2010, the Court granted Plaintiff's request, permitted Plaintiff to voluntarily dismiss the good faith claim, and reopened this case. (See D.E. 256.) As such, only Count I (breach of contract) and Count III (declaratory relief) of Plaintiff's Complaint remain at issue.

**II.     Defendant's Motion**

Defendant moves to preclude Plaintiff from presenting evidence or referring to Defendant's indemnity reserves for Plaintiff's claim. As defined by Defendant, the "indemnity reserves" provide a measure of the insurer's total expected exposure on a given claim based upon information known at that time and reasonable investigation. Although Defendant does not specifically cite to a particular document or testimony, Defendant's Motion vaguely refers to a document containing Defendant's indemnity reserve that was

---

[1] Count III of the Complaint additionally seeks a declaratory judgment that the City of Miami's determination as to the need to replace certain windows and sliding glass doors is binding.

produced pursuant to Magistrate Judge Garber's order.[2] Defendant argues such evidence and argument should be excluded as irrelevant, misleading, and prejudicial pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

In response, Plaintiff argues that Defendant's Motion is vague and overbroad as to the evidence it seeks to exclude. Plaintiff also argues that "evidence related to indemnity reserves is highly probative of whether QBE failed to perform its contractual obligations by failing to investigate, evaluate and quantify 1550's covered damages and ultimately remit payment." (Response at 2.) In support Plaintiff cites Vision I Homeowners Association, Inc. v. Aspen Specialty Insurance Company, 674 F. Supp. 2d 1321, 1328 (S.D. Fla. 2009) and contends that evidence of Defendant's reserves: (1) is probative of whether Defendant breached the policy; (2) is probative as to damages; (3) may constitute party admissions; and (4) may be used for impeachment. (See id. at 4-5.) It appears Plaintiff seeks to introduce documents demonstrating Defendant's indemnity reserves continued to increase from $400,000 in February 2006, to $650,000 in June 2007, to $2,500,000 in April 2009. (Id. at 5 n.2; D.E. 295-1.) Plaintiff further advises that the accuracy of the information affects the weight of the evidence, not its admissibility. Finally, Plaintiff argues that the concept of indemnity reserves is not so overly complicated for a lay person and would not confuse or mislead the jury. (Id. at 6.)

---

[2] Plaintiff attaches as Exhibit A to its Response several pages of supplemental reports issued by Andrew Bertucci ("Bertucci"), a claims adjuster for Florida Intracoastal Underwriters, Ltd. (See D.E. 295-1.)

In reply, Defendant asserts that the "documentation provided to 1550 was merely one document demonstrating changes in QBE's reserves for this claim without any elaboration on the need for these changes." (Reply at 3.) Defendant also states that, Bertucci, the person who created those documents, never inspected the property. (Id.) Furthermore, Defendant offers that the jury will be provided with Defendant's determination of the claim as both Defendant's appraiser and the appraisal panel will testify at trial. Thus, Defendant suggests that evidence of its indemnity reserves is irrelevant, unfairly prejudicial, and confusing.[3]

**III.  Discussion**

Rules 401-403 of the Federal Rules of Evidence set forth the basic rules controlling the admissibility of evidence. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Only relevant evidence is admissible under Rule 402. Finally, pursuant to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

As an initial matter, the Court notes that none of the cases cited by the Parties appear directly on point as to the issue at hand. Nor are they binding precedent. In Vision I, the

---

[3]  Defendant also continues to re-litigate the Magistrate Judge's order requiring production and steadfastly maintains evidence of its indemnity reserves was not discoverable. This matter is not before the Court.

plaintiff *inter alia* claimed the defendant insurer breached its contract by failing to adjust, pay, and/or settle its claim. 674 F. Supp. 2d at 1323. In that case, the defendant initially retained a firm as its independent adjuster in connection with the insured's property damage claim. Id. One of the firm's in-house adjusters inspected the property and created a draft report recommending the defendant create a $6.2 million reserve in connection with the claim. Id. That adjuster then left the firm and later was hired by the plaintiff's law firm. Id. The defendant sought to exclude the adjuster's draft report on various grounds including its recommendation of a reserve amount higher than the plaintiff's damages claim. Id. at 1327-28. In the end, the court in Vision I concluded it was "impossible to determine" pre-trial whether an adjuster's draft report and expert testimony were completely irrelevant to Plaintiff's claim that defendant's breached the contract by failing to adjust. Id. at 1328. In contrast, the indemnity reserve evidence in this case does not indicate whether anyone actually inspected the properties. Defendant indicates Bertucci did not conduct any inspections. The documents attached as Exhibit A to Plaintiff's Response also do not detail the nature and extent of any damages, as was the case in Vision I. Id. at 1327-28. There also is no indication who received the indemnity reserve information or what, if anything, was done with that information.

As such, the probative value of this evidence is unclear. First, neither side has explained how or why the indemnity reserve calculations at issue were created. There is no indication whether they were created pursuant to a statutory requirement or whether as part

of the insurer's normal practice. As stated in Barr v. Safeco Insurance Company of America, 1988 WL 64558 at *6 (N.D. Ill. 1988), "[t]he calculation of insurance reserves is an accounting technique by which insurance companies estimate the maximum potential liability on a claim." An insurer's ball park assessment of its potential maximum liability of a claim would appear to have little relevance to whether Plaintiff's damages are covered by the insurance policy and whether Defendant breached the policy by failing to pay for covered losses. This is no longer a bad faith case. Thus, Defendant's estimates of potential liability and whether or not that contradicts its later positions on Plaintiff's claims are irrelevant. It is also worth noting that the compelled production of information relating to Defendant's indemnity reserves occurred prior to Plaintiff's voluntary dismissal of its bad faith claim.

Even assuming evidence of Defendant's indemnity reserves is relevant, there exists a real danger such information would prejudice Defendant and potentially mislead the jury. The Court is not convinced that jurors would not equate Defendant's increasing reserve amounts with admissions of coverage. It could tend to inject a bad faith element into a simple breach of contract action. In addition, there is nothing in Bertucci's reports that explains the basis for the reserve calculations or why any changes in the amount were made. Thus, the there is a significant risk that evidence of Defendant's indemnity reserves would confuse the issues and mislead the jury.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant QBE Insurance Corporation's Motion *in Limine* to Preclude Evidence of and References to Indemnity

Reserves (D.E. 290), filed on July 6, 2010. is **GRANTED**.[4]

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of January, 2011.

                                              /s/ Joan A. Lenard
                                              **JOAN A. LENARD**
                                              **UNITED STATES DISTRICT JUDGE**

---

[4] The Court may revisit this issue at trial should Plaintiff proffer evidence relevant to its claims that may also touch upon Defendant's indemnity reserve calculations or reports.